**Robert L. FULLER, Appellant,**

v.

**ÆTNA LIFE INSURANCE COMPANY,**
Appellee.

**No. 17078.**

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1958.

Rehearing Denied Nov. 12, 1958.

James D. Sparks and Thompson, Thompson & Sparks, Monroe, La., for appellant.

Ronald L. Davis, William D. Brown and Theus, Grisham, Davis & Leigh, Monroe, La., for appellee.

Before RIVES, CAMERON, and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

April 18, 1956, appellant Robert L. Fuller applied in writing to appellee Aetna Life Insurance Company for a "Model Health Policy." May 4th, sixteen days later, he submitted to a physical examination by Aetna's doctor upon its request that he do so. The policy was issued bearing date of April 18th, and the full premium for its six months term was paid. May 13, appellant was seized with severe abdominal pains and telephoned his family physician, who sent out a prescription and told appellant to report to the hospital the following morning. May 15, an abdominal operation was performed resulting in discovery by the doctor that a cancer was present in appellant's colon which, by continuity, had involved the bladder and portions of the small intestine also.[1]

When Aetna refused to make payments under the policy and tendered to appellant the premium he had paid, he began this action to recover the indemnity provided in the policy for total disability and for hospital, surgical and nurses expenses. Aetna filed its answer denying liability under the policy and pleading specially "that the policy of insurance * * * specifically excludes from coverage thereby any loss resulting from sickness contracted and commencing before the policy has been in effect for fourteen days * * * [and] that the sickness resulting in the loss complained of was contracted and commenced at least seven months prior to the issue date of said policy * * *."[2] Aetna also filed a motion for summary judgment based upon the deposition it had taken of Dr. Guerriero, who had performed the operation and who had been appellant's family physician for about fifteen years. It was undisputed that malignant cells had been present in ap-

---

[1] A second operation was performed May 23 to resuture the wound.

[2] It also filed a second special defense in which it claimed that plaintiff gave false and untrue information in his application for the policy which nullified and voided the policy. This question is not presented to us, the District Court not having mentioned it and the parties wholly omitting reference to it.

pellant's colon for seven or more months prior to his application for the policy.

Appellant, having requested jury trial, opposed the summary judgment offering, besides his own, the depositions of Aetna's doctor and its agent who took the application. These established that appellant was not ostensibly "sick" but in good health at the time he applied for the insurance and during the ensuing fourteen days; and that, during said period and until the afternoon of May 13th, he was apparently enjoying good health, was not disabled in any way, and was carrying on his business as usual and was taking an active part in a political campaign then in progress.

It was further shown that appellant had had what appeared to be minor digestive disturbances as well as constipation over a period of years, and that his family physician had caused X-ray examination to be made of his entire gastro-intestinal tract in the early part of 1952 and in February, 1956. Both were negative as to colon and the entire intestinal tract, but the gall bladder did not visualize in the latter examination. (When the operation was performed, the gall bladder was found to be in good shape.) Based upon this showing the court below granted Aetna's motion for summary judgment. The correctness of that action is presented by this appeal, which involves fundamentally the question of what is meant by the word "sickness" as used in the policy.

We had the same question before us in World Insurance Co. of Omaha

Nebraska v. Pipes, 5 Cir., 1958, 255 F.2d 464, 469. The policy there covered "loss of time commencing while the policy is in force and resulting from sickness, the cause of which originates more than fifteen days after the policy date * * *."[3] That opinion was written by a judge learned and experienced in Louisiana law, and it affirmed the findings and opinion of a Louisiana judge having a like extended acquaintance with Louisiana law.[4] It deals with the Louisiana statutes and cases relied upon by the parties before us as well as cases from other courts, and it reaches a conclusion which is consonant with principles of insurance policy construction enunciated by this Court in recent cases, e. g., Continental Casualty Co. v. Robertson, 5 Cir., 1957, 245 F.2d 604, and American Home Life Insurance Co. v. Zuniga, 5 Cir., 1955, 288 F.2d 403.

The language of Pipes (255 F.2d at pages 469–470) controls here:

"In its ordinary meaning, a person is not 'sick' if he performs his usual occupation and engages in his usual activities.

" * * * Giving the insured the benefit of the doubt, we agree with the trial judge that 'sickness' under this policy means a disabling sickness causing loss of time from the insured's regular occupation and activities. This is in keeping with the purpose of the policy—to insure against disability."[5]

No good purpose will be served by repeating the discussion of the Louisiana cases here relied upon. It is not suffi-

3. The language of the policy here insures appellant "against loss resulting from sickness contracted and commencing after the first fourteen days from the date of this policy but while this policy is in force * * *."

4. See opinion of Benjamin C. Dawkins, Jr., Chief Judge, United States District Court, Western District of Louisiana, 150 F.Supp. 370. At page 380 et seq. the meaning of the word "sickness" was ably discussed by the District Court.

5. We also quoted from the Minnesota case of Cohen v. North American Life & Casualty Co., 1921, 150 Minn. 507, 185 N.W. 939: "As we construe it the defendant is liable, though the medical cause of the disease existed prior to the policy, if the disease or sickness does not manifest itelf until afterwards. So the ordinary man wanting health protection would understand it."

cient under its holding that the cancer was present in appellant's colon many months before he made the application. Its presence and growth had not become manifest in any malaise, discomfort or disability to the appellant. He so testified and appellee's agent, who spent from one to two hours with him on April 18th, stated that appellant appeared to be in good health. Two days after the fourteen day waiting period appellant was examined by Aetna's doctor, who made a complete examination of appellant including his abdomen, spending more than twice the time he normally devoted to such an examination. He certified to appellee that appellant was apparently all right and in good physical condition. The agent and the doctor were urgently invited by appellant to confer with his family physician.

Moreover, in addition to the fact that no medical examination was required in Pipes' case, the language before us is more favorable to the insured than was the language in that policy. There, liability was imposed only if the *cause* of the *sickness originated* after the crucial date. Here, liability ensued if *sickness itself* was contracted and commenced after the crucial date. Under the definition of *sickness* in Pipes, it is clear that this policy is not voided unless the disablement had become manifest before the critical date. Only after such manifestation can "sickness" as thus defined be held to have commenced or been contracted. The construction contended for by appellee would make an applicant for insurance a guarantor that the seeds of manifold pathologic conditions causing disablement—e. g., tuberculosis and other respiratory maladies, nephritis, arteriosclerosis, cancer, ulceration, diabetes—which may or may not reach an acute state, were not present in appellant's body on the policy date and during the fourteen day waiting period.

Read as a whole, it is plain that the parties here were dealing with palpably disabling sickness alone. We have be-fore us a short term policy with the explicit provision that the insurer is under no obligation to renew. Its benefits accrue only in event of total disability. A half dozen clauses in the policy dealing with liability of insurer under various stages and phases of disability use the term "such sickness," the "such" referring directly to the word "sickness" as used in the insuring clause quoted in Footnote 3, supra.

Being of the clear opinion that the court below erred in granting summary judgment, the same is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.