**MASSACHUSETTS CASUALTY INSURANCE COMPANY, a Massachusetts Corporation, Plaintiff-Appellant,**

v.

**Kenneth B. FORMAN, Defendant-Appellee.**

No. 74–1504.

United States Court of Appeals, Fifth Circuit.

July 25, 1975.

Rehearing and Rehearing En Banc Denied Nov. 14, 1975.

See 533 F.2d 1383.

L. J. Cushman, S. E. Cushman, Miami, Fla., Richard H. M. Swann, Coral Gables, Fla., for plaintiff-appellant.

Burton Young, Albert G. Caruana, North Miami Beach, Fla., for defendant-appellee.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant, Massachusetts Casualty Insurance Company, filed suit against appellee Forman seeking to rescind and cancel a disability insurance policy it had issued to him and to recover $5,500 disability benefits already paid. Forman counterclaimed for enforcement of the policy. Following a nonjury trial, the District Court entered judgment in favor of Forman for $30,800 accrued benefits plus specific enforcement of the policy (which if Forman lived to life expectancy would produce total benefits of around $400,000), plus attorney fees of $65,000. Relief to the company was denied. We reverse the award of benefits and of attorney fees, and direct that the policy continues in effect but without coverage for diabetes, the specific condition here in question. Also we hold that the company is entitled to repayment of the $5,500 previously paid.

Forman, a resident of Florida and formerly a chiropractor in New York, applied for the policy in October 1969. He had been hospitalized in New York September 7–20, 1968, and November 14—December 20, 1968. At least as early as December 2, 1968, his condition had been diagnosed as diabetes and he had been informed of the diagnosis. Despite these facts, now not disputed, the application for insurance contained numerous and egregious false statements concerning prior illness, treatment and hospitalization, including specific denials that the applicant had ever had diabetes.

After receipt of the application, the company procured an independent report from the Retail Credit Company verifying certain of Forman's factual statements concerning income and employment and supplying information on his military service and general life style. This report contained virtually no information on Forman's health, aside from the statement "Health is good." Relying on the application and on the Retail Credit report, Massachusetts Casualty issued to Forman on November 20, 1969, a sickness and accident policy insuring against (emphasis added):

(1) Accidental bodily injury *occurring during* the term of this Policy.

(2) Sickness which *first manifests itself during* the term of this policy.

Among the benefits were total disability payments of $1,000 per month for a period up to the life of the insured.[1]

On June 24, 1971, Forman executed a proof of loss and filed a claim alleging total disability as a result of diabetes which he claimed had been first diagnosed approximately one year earlier. The company began making disability payments, then discontinued them, and on November 16, 1971, filed suit against Forman seeking rescission and cancellation of the policy and return of benefits paid on the ground that in his application Forman had misstated his earned monthly income. In May 1972 the company learned of the preexistence of Forman's diabetic condition, and, with leave of court, amended its complaint to add this ground.

The District Court found that Forman had not misrepresented his earned income. This disposed of the sole ground for cancellation and denial of benefits asserted in the original complaint. With respect to the additional ground raised for the first time by the amended complaint, the court found that the incontestable clause of the policy became effective November 20, 1971, two years after the policy was issued. The portion of the policy headed "Incontestable" is as follows:

INCONTESTABLE: A. After this Policy has been in force for a period of two years during the lifetime of the

---

1. The parties assume without discussion that the Florida law applies, and we are given no facts on which we should hold otherwise. Therefore we apply Florida law, and where we find no law of that state the general body of insurance law.

Insured, it shall become incontestable as to the statements contained in the copy of the application. B. No claim for loss incurred or disability (as defined in the Policy) commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy.

Both of the quoted provisions are required by F.S.A. § 627.607.

The court erred in what appears to have been its view that the effect of these provisions was to bring Forman's diabetes within the policy although it had "first manifested[ed]" itself before the policy was issued.

■ "First manifest" provisions shelter insurers from claims arising from conditions which exist, and which are known by the insured to exist, before coverage commences. *See Continental Casualty Co. v. Robertson*, 245 F.2d 604, 606–608 (CA5, 1957); *Fuller v. Aetna Life Ins. Co.*, 259 F.2d 402 (CA5, 1958). In this case the condition for which Forman claimed benefits had "first manifested" itself almost a year before the policy became effective. Thus disability resulting from diabetes was never within the scope of policy coverage, and Forman cannot now claim diabetes-related disability benefits unless the incontestability provisions of the policy caused this prior-existing illness to become covered. We conclude that they did not have that effect.

Incontestable clauses protect both insurer and insured. *Winer v. New York Life Ins. Co.*, 140 Fla. 534, 190 So. 894 (1938). An incontestable clause safeguards an insured from excessive litigation many years after a policy has already been in force and assures him security in financial planning for his family, while providing an insurer a reasona-

ble opportunity to investigate. *Simpson v. Phoenix Mut. Life Ins. Co.*, 24 N.Y.2d 262, 267–269, 299 N.Y.S.2d 835, 839–841, 247 N.E.2d 655, 657–58 (1969). *See also Prudential Ins. Co. of America v. Prescott*, 130 Fla. 11, 176 So. 875, 878 (1937).

■ The great weight of authority, including decisions of this court, holds that an incontestable clause in a disability policy does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage.

> Where loss is claimed by reason of disability covered by the policy, it is necessary, under the average policy, that the cause of such disability arise within the policy terms and after the insurance has been effected. This is a condition of liability, a condition of the insurance. . . . The incontestable clause does not apply under those circumstances, and there can be no recovery unless the cause of disability arose within the time designated.

1 Appleman, Insurance Law and Practice § 333 at 600 (1941). *See also* 18 Couch on Insurance § 72:16 at 79–80 (2d Ed. 1968). In *United States v. Kaminsky*, 64 F.2d 735 (CA5, 1933), a war risk insurance case, the incontestable clause was one imposed by federal statute. The beneficiary claimed benefits for a total disability commencing while the insured was in the army, and subsequent death benefits. This court held that the insurer was not barred from defending on the ground that the disability existed before the insured entered the service and was, therefore, not covered.[2] This result is but a precisely targeted application of the general rule that incontestable clauses do not cut off defenses going to coverage. Then Chief Judge Cardozo of the New York Court of Appeals has drawn this distinction:

> The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate

---

2. For a survey of other cases which, with respect to disability policies, permit the defense of preexisting disability despite incontestable provisions, *see* 13 A.L.R.3d 1383.

as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

*Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 452, 169 N.E. 642 (1930). *Metropolitan Life* refers to the opinion of this circuit in *Sanders v. Jefferson Standard Life Ins. Co.,* 10 F.2d 143 (CA5, 1925), in which we had held that an incontestable clause which provided that the policy "shall be incontestable for any cause except for nonpayment of premiums" did not bar the insurer from asserting the exception to the double indemnity provision that excluded death arising from bodily injury inflicted by another person. Other Fifth Circuit cases are: *Metropolitan Life Ins. Co. v. Shalloway,* 151 F.2d 548 (CA5, 1945), and *Equitable Life Assur. Society v. First National Bank,* 113 F.2d 272 (CA5, 1940) (incontestable clause does not bar inquiry into actual age for purposes of applying an age adjustment clause); *Washington National Ins. Co. v. Burch,* 270 F.2d 300 (CA5, 1959) (eligibility of the insured under a group policy and proper classification within the group may be inquired into despite an incontestable clause).

Here, where coverage is framed in terms of first manifestation and the misrepresentation of no prior history of diabetes goes to the heart of the definition of coverage, the principle of not permitting incontestability to broaden the scope of coverage attains especially strong force. There is little reason to decline to give it full effect. The policy of protecting the insured from belated discovery that he has no coverage loses much of its vitality.

■ Our conclusion is not inconsistent with the two statutorily-required provisions of the incontestable clause in this policy. Subparagraph A provides that after two years the policy "shall become incontestable as to the statements contained in the copy of the application."

Applying this plain and straightforward statement as written, it would appear to bar defenses that spring from—and only from—statements in the application. So read, subparagraph A has no application to the issue of whether diabetes was outside the coverage of the policy because it first manifested before the policy was issued. Applying subparagraph A as written is consistent with the general law, discussed above, concerning interplay of incontestable clauses and questions of coverage.

■ Subparagraph B provides:

No claim for loss incurred or disability (as defined in the Policy) commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had *existed* prior to the effective date of coverage of this Policy (Emphasis added.)

This statutory clause only prohibits denials of claims based on the prior *existence* of a disease. Such denials are irrelevant here because a disease is covered no matter when it existed, so long as it was not first manifested prior to the policy date. Thus subparagraph B has no effective field of operation. Giving it some scope of operation by reading "existed" as "existed and manifested" goes beyond the language of the clause and is contrary to the general principle that incontestable clauses do not operate to extend coverage beyond that contracted for. Moreover, such a reading would not promote the purpose or policy of § 627.607. The statutory clause protects both parties from uncertainty where coverage turns on when a disease first existed, occurred or arose. Under such policies coverage may be uncertain even long after the policy was procured because a disease may exist but not be discoverable by reasonable medical investigation. This clause resolves the uncertainty in favor of coverage beginning two years after the policy date. Where coverage turns on *manifestation* rather than existence,

the insurance policy itself eliminates this uncertainty since manifestation is normally discoverable by reasonable medical investigation.

Florida requires that incontestable clauses be included in several other types of insurance policies. The provision required in life insurance policies, § 627.455, excludes from incontestability, at the option of the insurer, "provisions relative to benefits in event of disability." Section 627.463 provides that a clause in any life insurance policy providing for incontestability after a specified period "shall preclude only a contest of the validity of the policy, and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage, whether or not such restrictions or exclusions are excepted in such clause." For group life insurance policies, § 627.560 requires a provision that "the validity of the policy shall not be contested, except for nonpayment of premium" after two years. The succeeding section, § 627.561, requires an additional provision that no statement made by an insured shall be used in any contest unless a copy of the instrument containing the statement has been furnished to him or to his beneficiary. Group disability policies must provide that in the absence of fraud misrepresentations for the purpose of effecting insurance shall not avoid the policy or reduce benefits unless contained in a written instrument signed by the insured (or policyholder), a copy of which has been furnished to the policyholder or insured or beneficiary. § 627.657. Certain endowment and annuity contracts, and industrial life policies, must contain a provision for incontestability after two years except for nonpayment of premiums, but at the option of the insurer the contract may also except provisions re-

lating to benefits in the event of disability and provisions relating to accidental death. §§ 627.466 and 627.506. While these provisions do not present a wholly consistent pattern, they reveal at least that the legislature does not consider incontestability to be plenary in nature. Also, several sections provide for reduced benefits where the age or sex of the insured has been misstated, § 627.456 (life insurance), § 627.468 (annuity and endowment contracts), § 627.507 (industrial life policies), § 627.620 (disability policies). None of these sections purports to limit its application to the period of time during which the particular policy is contestable.[3]

Thus the law concerning incontestable clauses in general, the specific language of the incontestability provisions of this policy, and the Florida statutory scheme, lead us to the decision that the fact that Forman suffered from diabetes which had become manifest before the policy was issued excluded diabetes-related disability from coverage.[4]

■■■ We conclude, however, that the company is not entitled to cancellation and rescission. A generalized incontestable clause, i. e., one providing that the policy is incontestable after a specified number of years except for nonpayment of premiums, bars assertion of fraudulent misstatements in an application as the basis for invalidity of the policy. *Winer v. New York Life Ins. Co.*, 130 Fla. 115, 177 So. 224 (1937) and 140 Fla. 534, 190 So. 894 (1938). That conclusion is even more clearly required where the clause is more specific, as is subparagraph A. Though incontestability is often cast in terms of defenses it applies also to efforts by the insurer to obtain the affirmative relief of cancellation and rescission. *Prudential Ins. Co. v. Pres-*

3. *See* Metropolitan Life Ins. Co. v. Shalloway, 151 F.2d 548 (CA5, 1945), *supra*, and Equitable Life Assur. Society v. First National Bank, 113 F.2d 272 (CA5, 1940), *supra*, holding that an incontestable clause does not prevent giving effect to an age adjustment clause.

4. Our approach has been through the rubric of incontestability because that is the one most

often employed, and the two policy provisions that we have discussed were labeled "Incontestable." More accurately, part B is not an incontestable clause, properly so called, but a legislative expansion of coverage, having a field of operation wholly independent of statements made in the application. Under such an approach the result is the same.

*cott,* 115 Fla. 365, 156 So. 109 (1933); *Winer, supra.* Though the policy continues in effect it, of course, does not cover diabetes.[5]

 The company is entitled to the $5,500 of benefits that it paid to Forman under the erroneous understanding that his diabetic condition had initially manifested itself after the policy was issued. Restatement of Restitution § 16 (1937).[6]

 The award of $65,000 attorney fees pursuant to F.S.A. § 627.428 must be reversed. It is for the District Court on remand to determine whether under the Florida law and the circumstances of this case there should be an award of fees.

Summarizing, we reverse the award to Forman of benefits and of attorney fees. We reverse the denial to the company of judgment for the benefits it had paid and direct entry of judgment for the company on this claim. We modify the denial to the company of cancellation and rescission to provide that although the policy is not cancelled it does not cover diabetes, and as modified affirm this part of the judgment.

Reversed in part; affirmed, as modified, in part; and remanded for further proceedings consistent with this opinion.

---

5. The District Court found that Forman signed the application in blank and sent it to the agent, who filled in the answers called for. Despite repeated assertion to the contrary in Forman's brief, the District Court made no finding of fact as to who furnished to the agent the information embraced in the false answers. (Also, the court did not address itself at all to the several false statements in the representations to the medical examiner, which were a second part of the application, and were signed by Forman and attested by him to be true and correct.)

The trial court conducted a hearing on attorney fees several months after the decision on the merits. Forman elevates to the dignity of "findings" one or more informal statements made by the court at this hearing and arguably indicating that Forman did not supply the agent with the subject matter of the answers. The judge made the statements in colloquy with counsel during the process of recalling to his mind the details of the case and of the merits decision. These were not findings. If they had been we would hold them plainly erroneous. The evidence is overwhelming that the information contained in the misrepresentations originated with Forman.

6. As previously noted Forman's claim, filed in June 1971, represented that diabetes had been diagnosed approximately one year earlier.