**Milton C. FISCHER, Plaintiff,**

v.

**MASSACHUSETTS CASUALTY INSURANCE COMPANY, Defendant.**

**No. 76 Civ. 3805 (VLB).**

United States District Court,
S. D. New York.

June 30, 1978.

**940**

Allen Jay Bodner, New York City, for plaintiff.

Hyman L. Kowal, New York City, for defendant.

## ORDER

VINCENT L. BRODERICK, District Judge.

I have considered Magistrate Sol Schreiber's Recommendation herein, which I adopt in its entirety. Based on the Magistrate's Recommendation, the following action is taken:

Defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is granted in part, pursuant to Rule 56(d), F.R.Civ.P.; defendant's first, second, third, fourth, fifth and eighth affirmative defenses are stricken, and defendant's counterclaim is dismissed.

SO ORDERED.

## MAGISTRATE'S RECOMMENDATION

By order of the Honorable Vincent L. Broderick, the above-captioned case was referred to the undersigned for all pretrial purposes.

This is an action to collect disability benefits allegedly due under an insurance policy issued in June 1973 by defendant Massachusetts Casualty Insurance Company to plaintiff Milton C. Fischer. Both sides have moved for summary judgment. In addition, plaintiff has moved to dismiss defendant's affirmative defenses and counterclaim.

When Fischer applied for the policy he failed to reveal to the insurance company that he had been hospitalized for heart attacks in 1969 and 1970 and had thereafter remained under the care of a cardiovascular specialist.

In June 1975 the Brooklyn luncheonette and candy store plaintiff owned with other relatives was sold and he lost his job of thirty-seven years as counterman. Since then he has not been gainfully employed.

The complaint in this action seeks $700 per month for the period since September 1975, when Fischer says he became disabled by heart disease, as well as a declaratory judgment that he is entitled to benefits while he is disabled or for a period of sixty months, if that is less, according to the terms of the policy.

The principal issue framed by the respective motions for summary judgment is whether the incontestable clause bars an insurance company from denying benefits for disability caused by disease revealing itself prior to issuance of a policy, when the insuring clause of the policy purports to cover only "sickness which first manifests itself during [its] term."

The inclusion of an incontestable clause is mandated in all accident and sickness policies by Section 164(3)(A) of the Insurance Law of New York, enacted in 1951. Under this provision of the Insurance Law the insurer has the option to use an incontestable clause which permits benefits to be denied if the insured's policy application is later found to contain fraudulent misstatements. Section 164(3)(A) refers to such a clause as a "Time Limit on Certain Defenses" provision. Defendant insurance company chose not to use that type of clause in Fischer's policy; instead, it employed an incontestable clause ostensibly protecting the policy from contest on the basis of fraudulent misstatements after the two-year contestable period had run.

Fischer's policy contains under Part X, General Provisions, a clause labeled "Incontestable." The language of this provision is

mandated by the Insurance Law for accident and sickness policies not employing the alternate Time Limit on Certain Defenses clause and it reads as follows:·

> After this Policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the copy of the application.
> b. No claim for loss incurred or disability (as defined in the Policy) commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy.

It is the effect of the above incontestable clause upon the "first manifest" provision of the insuring clause which is the subject of contention in this suit.

Plaintiff argues that to allow the insurance company to deny coverage as to illness preexisting the policy (when the disability commences after the two-year contestable period has passed) in effect renders the statutorily-mandated incontestable clause a nullity, thereby defeating the legislative purpose in requiring this provision in accident and sickness policies.

In turn, defendant contends that the defined insurance risk may not be extended by the incontestable clause and that to deny benefits on the basis of the "first manifest" provision of the insuring clause is merely an exclusion from coverage and not a challenge of the validity of the policy such as the incontestable clause would forbid.

The principal New York case cited by defendant insurance company is *Apter v. Home Life Insurance Co.,* 266 N.Y. 333, 194 N.E. 846, 98 A.L.R. 1281 (1935), in which the Court of Appeals decided that an insurer is entitled to show that the claimant insured, although disabled by sickness or disease, is not entitled to disability benefits because the condition causing the disability first manifested itself prior to the effective date of the policy. In *Apter* the policy provided that after one year it would be incontestable except for the nonpayment of premiums. The coverage of the policy was limited to disability resulting from a disease commencing after the issuance of the policy, and the insurer claimed that the illness causing the insured's disability had existed before the policy was issued. The Court of Appeals rejected the contention of the insured that this defense of the insurer should be barred by the incontestable clause. It said that an incontestable clause means only that the policy will be unaffected by a defense that the policy itself is invalid and that the policy is still limited by the terms of its coverage.

Plaintiff in the instant case contends that for two main reasons *Apter* can be distinguished from the instant suit and is no longer the law of New York: (1) the *Apter* incontestable clause does not contain any provision resembling Paragraph B of Fischer's incontestable clause and (2) at the time of *Apter* the Insurance Law did not mandate inclusion of such a clause.

In support of his first argument plaintiff points out that the incontestable clause chosen by defendant states that "no claim for . . . disability . . . commencing after two years from the . . . issue of this Policy shall be reduced or denied on the ground that a disease *not excluded by name or specific description* . . . had existed prior to . . . this Policy" (emphasis added). Defendant's broad denial of premanifested illnesses, plaintiff argues, does not amount to exclusion "from coverage by name or specific description" such as the policy requires. This contention is further supported by evidence that the brochure distributed to the public in connection with the type of policy purchased by Fischer advertises incontestability after two years and lists only acts of war as excluded from coverage.

Plaintiff's second argument against *Apter* is that the 1951 introduction of Section 164(3)(A) of the Insurance Law has changed the law of New York on whether the incontestable clause in Fischer's policy enables the insurance company to exclude from coverage preexisting illness. In support of this

view, the Court's attention is directed to the case of *Rackear v. Springfield Fire & Marine Ins. Co.,* 48 Misc.2d 707, 265 N.Y.S.2d 715 (Sup.Ct., App.Term, 1st Dept. 1965). In that action suit was brought to recover payments allegedly due under a major medical expense insurance policy which insured "against (1) sickness of the insured, contracted and commencing while this policy is in force." The policy included the identical incontestable clause found in Fischer's policy and mandated by Section 164(3)(A) of the Insurance Law. In *Rackear* plaintiff sought to recover for hospital expenses incurred more than two years after the policy took effect, while defendant insurance company attempted to deny coverage on the basis that the plaintiff's ulcer condition (which he had not originally disclosed to the insurance company) predated the policy and was therefore not covered by its terms. The court held for plaintiff "because of the . . . 'incontestable' clause of the policy," 48 Misc.2d 707, 709, 265 N.Y.S.2d 715, 717, and justified its decision as follows:

> Defendant may not complain of the rigor or unfairness of this application of the law. It could have protected itself against a situation of this kind by incorporating in its policy the language authorized by clause (a) of Insurance Law, Section 164 subd. 3(A), par. 2, which reads:
>
> > "After two years from the date of issue of this policy no misstatements, *except fraudulent misstatements,* made by the applicant in the application for such policy shall be used to avoid the policy . . . ."

48 Misc.2d 707, 710, 265 N.Y.S.2d 715, 718.

*Rackear* thus said that since the insurance company did not employ the Time Limit on Certain Defenses provision exempting fraudulent misstatements from the operation of the incontestable clause, it should not be permitted to deny coverage as to fraudulently concealed illnesses which manifested themselves before the policy took effect and caused hospital expenses to be incurred after the contestable period had passed. *Rackear* contrasted *Apter* as follows:

> [T]he policy in the *Apter* case, which was decided in 1935, did not contain the broad incontestability clause found in the instant policy and mandated by the 1951 statute. This clause provides that "no claim for loss incurred commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a [nonexcluded] disease or physical condition . . . had existed prior to the effective date of coverage of this policy." In my view, it clearly limits the effect of the loss coverage restriction to loss incurred during the first two years.

48 Misc.2d 707, 712, 265 N.Y.S.2d 715, 719–20.

After *Rackear* the next major New York case construing the scope of the incontestable clause was *Mutual Life Ins. Co. v. Hayden,* 87 Misc.2d 1039, 386 N.Y.S.2d 978 (Sup. Ct., N.Y.Co.1976), which concerned a disability policy with the standard Section 164(3)(A) incontestability clause and an insuring clause which covered "disability . . . which results from sickness or disease contracted and commencing while this policy is in force." The insured had contracted retinis pigmentosa before applying for the policy but did not disclose this to the insurance company in his application. He applied for disability benefits more than two years after the policy was issued but sought benefits for the period beginning *only three months after the policy was purchased.*

The *Hayden* court held that the incontestable clause did not prohibit the insurance company from denying benefits and said that this conclusion was not inconsistent with *Rackear.* The court drew attention to the exact wording of the incontestable clause, which is as follows:

> No claim for loss incurred . . . *after two years* from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition . . . had existed prior to . . . this policy (emphasis added).

The court explained the contrary result in *Rackear,* where the insured was successful

in his claim for benefits, by pointing out that in *Rackear*

> inasmuch as the insured's [medical cost] losses were incurred more than two years after issuance of the policy, the insurance company was barred by the incontestable clause from refusing payment [for medical treatment for an ulcer which antedated the policy]. In the instant case [Hayden], involving disability income policies, the alleged disability commenced *less* than two years after the policies were issued, i. e., . . . only three months thereafter. Accordingly, the incontestable clause does not bar MONY from claiming that [the insured] defendant's condition pre-existed [the issuance of the policy] . . . .. The fact that defendant's claim was not submitted until [after the contestable period had passed] is irrelevant. The statute clearly says that the operative date is when the disability commences, not when the claim for disability is submitted.

87 Misc.2d 1039, 1043–44, 386 N.Y.S.2d 978, 981.

The insurer was victorious in *Hayden* because the insured sought benefits for a disability commencing *within* the two-year contestable period. The court said that if the insured had become disabled by retinis pigmentosa more than two years after taking out the policy, the incontestable clause would have protected his right to receive benefits, despite the insuring clause of the policy that said the policy was to cover only "disability . . . which results from sickness or disease contracted and commencing while this policy is in force."

The *Hayden* court went on to state an alternate ground for its holding that the insurance company should be allowed to deny benefits as to illness manifesting itself prior to the issuance of the policy. Citing *Mass. Casualty Ins. Co. v. Forman,* 516 F.2d 425 (5th Cir. 1975), as the source of its analysis, *Hayden* declared that the statutory incontestable

> clause only prohibits denials of claims based on the prior *existence* of a disease. It does not bar the insurance company

from denying a claim where the disease *existed and was manifested* prior to the policy's issuance.

87 Misc.2d 1039, 1044, 386 N.Y.S.2d 978, 982.

The *Forman* opinion, which defendant in the instant suit espouses, states that, as to disability occurring after the two-year contestable period has passed, the incontestable clause mandates payment as to illness which exists but has not revealed itself at the policy's inception but permits payment to be denied as to disease which has revealed itself before the policy takes effect.

Plaintiff has two major arguments against the adoption of *Forman* in this state: (1) that under New York case law "exist" and "manifest" mean the same thing for the purposes of deciding when a disease commences, *Reiser v. Metropolitan Life Ins. Co.,* 262 A.D. 171, 28 N.Y.S.2d 283 (1st Dept. 1941), *aff'd* 289 N.Y. 561, 43 N.E.2d 534, *Wenger v. Mutual Benefit Health & Accident Assn,* 203 N.Y.S.2d 946 (Sup.Ct., N.Y.Co.1960), and (2) that to follow the *Forman* exist-manifest distinction renders the statutorily-mandated incontestable clause a nullity, giving it no field of operation and thus defeating the legislative intent in requiring such a clause.

Plaintiff insured contends that Paragraph B of the incontestable clause is rendered a nullity by *Forman* because that opinion interprets the incontestable clause to give protection to preexisting but unmanifested illnesses which cause disability after the two year contestable period has passed, though the insuring clause of the policy guarantees coverage for such unrevealed illnesses whether they cause disability *before or after* two years from the effective date of the policy. There is support for Fischer's argument within the *Forman* decision itself:

> This statutory clause [Paragraph B] only prohibits denials of claims based on the prior *existence* of a disease. Such denials are irrelevant here [in a suit construing a policy with an insuring clause covering only illness manifesting itself during the policy] because *a disease is covered no matter when it existed, so long as it was*

*not first manifested prior to the policy date.* Thus subparagraph B has no effective field of operation (emphasis added). 516 F.2d 425, 429.

Since the interpretation of the incontestable clause urged by *Forman* and by the instant defendant has the effect of rendering the clause an absolute nullity, it is reasonable to conclude that interpretation is incorrect.

■ To give Paragraph B of the statutorily-imposed incontestable clause a field of operation, it is recommended that the word "existed" in that clause be read as "manifested" so that the provision protects coverage of not preexisting but premanifested illnesses which cause disability after the two-year contestable period has passed. The proper interpretation of the incontestable clause is that it be used to deny benefits when disability caused by premanifested illness occurs within the two-year contestable period but to allow recovery when such disability occurs more than two years from the inception of the policy.

Had the defendant employed the Time Limit on Certain Defenses clause to give the public notice that the policy would be contested on the basis of fraudulent misstatements in the application, this case might be decided differently, *Rackear v. Springfield Fire & Marine Ins. Co.,* 48 Misc.2d 707, 265 N.Y.S.2d 715 (Sup.Ct., App. Term, 1st Dept. 1965), as it might had defendant specifically excluded premanifested illness from the coverage advertised in its policy. Instead, the brochure distributed to the public in connection with the type of policy purchased by Fischer does not state that the insurance covers only diseases originating after issuance of the policy. A person reading this brochure would reasonably assume that coverage would not be denied after two years except for disabilities caused by acts of war.

■ It is a widely recognized rule of insurance law that a policy should be construed against the insurance company, *Janneck v. Metropolitan Life Ins. Co.,* 162 N.Y. 574, 57 N.E. 182 (1900), and this concept has been held applicable in the construction of incontestable clauses in disability policies, *Berkshire Life Ins. Co. v. Weinig,* 290 N.Y. 6, 47 N.E.2d 418 (1943). The reasonable expectations of the insurance buyer must be met. *Weinberg v. Ins. Co. of North America,* 88 Misc.2d 82, 388 N.Y.S.2d 69 (Sup.Ct., App.Term, 1st Dept. 1976). In view of the foregoing, defendant insurance company has not satisfied the mandate of the Insurance Law that it exclude illnesses not covered by the incontestable clause "by name or specific description."

■ The legislative history of the incontestable clause shows it is designed to encourage insurance buyers to purchase insurance with confidence that after the contestable period has passed they are assured of receiving benefits if they are disabled.[1] Consumers are persuaded to buy insurance because, as noted above, the incontestable clause protects recovery as to premanifested illness if the disease causes disability after the two-year contestable period has passed. The insuring clause in Fischer's

---

1. The reason for the introduction of the incontestable clause in insurance policies is set forth in 7 Williston on Contracts (3d ed. 1963) § 912:394–95:

    The explanation lies in the early greed and ruthlessness of the insurers. All too often, instead of paying the beneficiary, they resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy, as to which they carefully refrained from comment until the insured had died and was unable to testify on his own behalf . . . . The effect of such cases . . . was to create the impression on the public mind that a contract of life insurance was a one-sided affair, and was

simply a scheme on the part of designing individuals and corporations to secure to themselves the earnings of others . . . . This prevailing impression . . . was calculated to make people, as a rule, indisposed to enter into contracts of life insurance . . . .

    This evil worked its own correction. Often forced to abandon this objectionable practice by impatient legislatures, . . . but more often spurred by the obvious and increasing sales resistance among prospects to whom insurance agents sought to sell insurance, most life insurance companies today, voluntarily or by statutory compulsion, incorporate incontestable clauses in their policies.

policy attempts to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued. Since the "first manifest" provision of the insuring clause controverts the statutorily—imposed incontestable clause, it is recommended that the insurance company not be permitted to rely on such a purported limitation of coverage.

Plaintiff in the instant suit seeks summary judgment and dismissal of defendant's answer, affirmative defenses and counterclaim.

Defendant's first four affirmative defenses are that plaintiff's disabling illnesses are attributable to health problems diagnosed prior to issuance of defendant's policy and are therefore not covered by the policy. The fifth affirmative defense is that as part of the insurance application procedure plaintiff was examined by defendant's physician and lied to him about his health history, concealing illnesses which later disabled him. It is recommended that these affirmative defenses be dismissed on the basis of the incontestable clause.

 The sixth affirmative defense, an allegation that plaintiff is not totally disabled, presents an issue of the fact which should stand pending trial, as should the seventh affirmative defense which alleges that plaintiff did not comply with the terms and conditions of the policy in that he failed to file a timely notice of claim and failed to make correct and complete responses on his proof of loss form. In view of these factual issues which must await trial, it is recommended that plaintiff's motion for summary judgment be denied.

Defendant's final affirmative defense is that the policy of insurance stated that the insured would be indemnified only for total disability resulting from sickness which first revealed itself after the policy took effect. It is recommended that this defense be dismissed on the ground that the incontestable clause in plaintiff's policy allows recovery when disability based on premanifested illness occurs more than two years from the inception of the policy.

The incontestable clause similarly requires denial of defendant's motion for summary judgment and its counterclaim for a judgment of nonliability under the policy issued to plaintiff.