**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,**
Plaintiff,

v.

**James G. ALTMAN, Defendant.**

**Civ. A. No. 91–70698.**

United States District Court,
E.D. Michigan, S.D.

June 3, 1992.

---

5. "Now there arose a new king over Egypt, who knew not Joseph." Exodus 1:9.

Francis Ortiz, Dickinson Wright, Detroit, Mich., for plaintiff.

Mayer B. Gordon, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff/Counter-defendant Provident Life and Accident Insurance Company ("Provident" or "plaintiff") filed a motion for summary judgment as to Count II of the complaint February 18, 1992. Defendant/Counter-plaintiff James G. Altman also filed a motion for summary judgment February 18, 1992. Both parties filed timely responses and replies to the motions. Oral argument was heard March 19, 1992.

In its complaint Provident sought recision of the contract based on Altman's fraud and misrepresentation (Count I) and sought a declaratory judgment for restitution of $9,160 in benefits it had paid to Altman under a reservation of rights (Count II). Altman subsequently filed a one-count counter-complaint for breach of contract and prayed for continued insurance benefits through his policy with Provident. Provident conceded during oral argument that policy language precluded it from recovery on Count I of its complaint. Thus, the court will not address Count I of Provident's complaint.

### BACKGROUND FACTS

Altman applied to Provident for a disability income insurance policy July 1, 1987. On the application, the question "Have you ever been treated for or ever had any known indication of ... disease or disorder of the eyes ...?" was answered "No." However, Altman's treating ophthalmologist, Dr. Robert Frank, had told Altman in 1986 that Altman had chronic uveitis in both eyes and that the condition could lead to a loss of vision. Frank dep. at 37–39.

Based upon his application, Altman was issued Policy # 635–791665 on August 10, 1987. The policy covers disabilities due to sickness or injury. "Sickness" is defined in the policy as "sickness or disease which is first manifested while [the] policy is in force." Plaintiff's ex. 4 at 4.

The policy also contained an incontestability clause, which deviates from the requirements of Mich.Comp.Laws Ann. § 500.3408(b). The statute reads

There shall be a provision as follows: TIME LIMIT ON CERTAIN DEFENSES: (a) After [2] years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined by the policy) commencing after the expiration of such [2]-year period.

\* \* \* \* \* \*

After this policy has been in force for a period of [2] years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.

(b) No claim for loss incurred or disability (as defined in the policy) commencing after [2] years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

\* \* \* \* \* \*

The correlating clauses in the policy drafted by Provident read as follows:

1. After this policy has been in force for two years during your lifetime, we cannot contest the statements in the application.

2. No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description has existed prior to the Effective Date of this policy.

Plaintiff's ex. 4 at 14.

In addition, the policy contained a pre-existing condition limitation which read

[w]e will not pay benefits for loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition. A claim for benefits for loss starting thereafter will not be reduced or denied on the ground it is caused by a Pre-existing Condition unless the condition is excluded by name or specific description. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which either: 1) resulted in you receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

*Id.* at 5.

Altman filed a claim for benefits August 21, 1990, based on a disability caused by a vitreous hemorrhage in his left eye which occurred June 11, 1990. The claim triggered a medical review that revealed Altman's history of eye disease and treatment which had not been disclosed on his application for the policy. Provident paid benefits totalling $9,160.00 under a reservation of rights while the review was underway. Provident subsequently denied Altman's claim for benefits February 14, 1991, because the policy covered disability caused only by accident or sickness. "By definition sickness means sickness or disease which is first manifested while your policy is in force[; and] [b]ased on the medical records, we have concluded that your eye condition is not a sickness covered by the terms of the policy, because it was not first manifested while the policy was in force." Plaintiff's ex. 5.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes

grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not signif-

icantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

## ANALYSIS

In this diversity action, Michigan law applies. Provident argues that it is entitled to summary judgment on Count II for restitution of $9,160.00 it has paid plaintiff in benefits. Provident contends that because Altman's chronic uveitis first manifested before the policy's effective date, the disability resulting from a vitreous hemorrhage, which it also contends was caused by Altman's chronic uveitis, is not covered under the terms of this policy. Using the definition of "sickness" provided in the policy, Provident contends that disability resulting from any disease that had both existed and manifested before the effective date of the policy was never intended to be covered by the policy.

Defendant Altman bases his claim for benefits on the following three arguments: 1) the cause of the disability was the vitreous hemorrhage, and it is undisputed that the hemorrhage first manifested while the policy was in force; 2) the policy's incontestable clause bars plaintiff from denying coverage based on the ground that a sickness or physical condition existed before the effective date of the policy; and 3) the policy's pre-existing condition clause also bars plaintiff from denying coverage.

## I. CAUSE OF THE DISABILITY

■ The first issue that must be addressed is whether the cause of the disability was the vitreous hemorrhage, which occurred June 11, 1990, while the policy was in force, or whether the cause of the disability was Altman's chronic uveitis, which was diagnosed in March 1986. If, as Altman contends, the cause of the disability was the vitreous hemorrhage, clearly the disability must be covered by the policy because it is undisputed that the hemorrhage manifested while the policy was in force.

Provident has needlessly complicated this issue by ignoring the plain language of the policy and delving deeper into Altman's medical history to find the cause of the vitreous hemorrhage, or in other words, the cause of the cause of the disability. Both parties have taken deposition testimony and briefed the issue extensively. Provident's expert testified that the hemorrhage was "most likely caused" by Altman's chronic uveitis. McCole aff. at 4. Altman's own physician, however, testified that there are four equally likely causes of the hemorrhage. Frank aff. at 1.

Regardless of the differences of the experts, there is no genuine issue of material fact. The policy covers disabilities due to sickness or injury. The policy further defines "sickness" as "sickness or disease which is first manifest while [the] policy is in force." Plaintiff's ex. 4 at 4. The policy does not require further inquiry into the cause of the cause of the disability. In the instant case the cause of the disability was the vitreous hemorrhage itself; and because it undisputedly manifested while the policy was in effect, the resulting disability must be covered by the policy.

## II. INCONTESTABLE CLAUSE

■ Altman contends that even if the cause of his disability were his chronic uveitis, the policy's incontestable clause requires coverage of his disability. Again, that clause reads

1. After this policy has been in force for two years during your lifetime, we can-not contest the statements in the application.

2. No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

*Id.* at 14.

Defendant Altman maintains that because his disability occurred more than two years after the effective date of the policy, the clause precludes Provident from denying him coverage. A plain reading of the clause supports that view. However, Provident relies on case law which has precluded coverage, despite the existence of an incontestable clause, for disabilities resulting from conditions that both existed and manifested before the effective date of coverage.

In 1975 the United States Court of Appeals for the Fifth Circuit found that "[t]he great weight of authority ... holds that an incontestable clause in a disability policy does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage." *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425, 428 (5th Cir.1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). The *Forman* reasoning was recently followed in a case in this district decided by Judge Avern Cohn. *Weiner v. Paul Revere Life Ins. Co.,* No. 90–72772, 1991 WL 353370 (E.D.Mich. July 31, 1991).

In the *Forman* case, which involved circumstances similar to those in the instant case, the Fifth Circuit applied Florida law. The policy between Forman, the insured, and Massachusetts Casualty, the insurer, contained the following statutorily mandated provision:

INCONTESTABLE: A. After this Policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the copy of the application. B. No claim for loss in-

curred or disability (as defined by the Policy) commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy.

*Forman,* 516 F.2d at 427–28. Like the policy in the instant case, that policy covered "[s]ickness which first manifests itself during the term of this policy." *Id.* at 427.

When Forman applied for disability insurance in October 1969, he stated on his application that he never had had diabetes. In June 1971 he made a claim for benefits based on a disability resulting from diabetes.[1] In May 1972, after the two-year incontestability period expired, the insurer discovered the existence of Forman's diabetic condition and that Forman knew he had diabetes in December 1968, one year prior to the effective date of the policy. The insurer sued for restitution of the benefits it had paid Forman, arguing that because Forman's diabetes first manifested before the effective date of the policy, it was not a "sickness" as defined by the policy, thus, not within the scope of coverage. The Fifth Circuit agreed.

The court based its decision on the public policy reasoning behind incontestable clauses. "Incontestable clauses protect both the insurer and insured. An incontestable clause safeguards an insured from excessive litigation many years after a policy has already been in force and assures him security in financial planning for his family, while providing an insurer a reasonable opportunity to investigate." *Id.* at 428 (citations omitted). The court added

Here, where coverage is framed in terms of first manifestation and the misrepresentation of no prior history of diabetes goes to the heart of the definition of coverage, the principle of not permitting incontestability to broaden the scope of coverage attains especially strong force.

There is little reason to decline to give it full effect. The policy of protecting the insured from belated discovery that he has no coverage loses much of its vitality.

*Id.* at 429. The court then attempted to distinguish between prohibiting denial of claims based on the prior *existence* of a disease and prohibiting denial of claims based on the prior *manifestation* of a disease.

[The] statutory clause only prohibits denials of claims based on the prior *existence* of a disease.... Giving [the clause] some scope of operation by reading "existed" as "existed and manifested" goes beyond the language of the clause and is contrary to the general principle that incontestable clauses do not operate to extend coverage beyond that contracted for. Moreover, such a reading would not promote the purpose or policy of [the statute]. The statutory clause protects both parties from uncertainty where coverage turns on when a disease first existed, occurred or arose. Under such policies coverage may be uncertain even long after the policy was procured because a disease may exist but not be discoverable by reasonable medical investigation. This clause resolves the uncertainty in favor of coverage beginning two years after the policy date. Where coverage turns on *manifestation* rather than existence, the insurance policy itself eliminates this uncertainty since manifestation is normally discoverable by reasonable medical investigation.

*Id.* at 429–30 (emphasis in original).

Provident has recited a number of cases which have followed the reasoning of the *Forman* decision, including a recent one from this district which applies Michigan law, *Weiner v. The Paul Revere Life Ins. Co.,* No. 90–72772, 1991 WL 353370 (E.D.Mich. July 31, 1991). In *Weiner,* Judge Avern Cohn denied summary judgment after he found that a genuine issue of material fact existed regarding whether

---

**1.** In *Forman* it was undisputed that it was Forman's diabetes that caused the disability for which he sought benefits. *Id.* at 427.

the insured's multiple sclerosis had manifested before the policy went into effect. However, in his written opinion Judge Cohn did discuss the effect of the policy's incontestable clause.

[T]he reasonableness of the majority position is best understood by appreciating the distinction between an incontestability clause that bars a defense based on an insurer's claim that a disease existed, as opposed to a claim that it manifested itself, prior to a policy's issuance. The former incontestability clause, like [Mich. Comp.Laws Ann.] § 500.3408(b), protects an insured who, when filling out an insurance application, does not know, and has no reason to know, that he or she suffers from a particular disease. In contrast, the latter incontestability clause would protect an insured who, because a disease has manifested itself, knows that he or she suffers from a disease and nevertheless fails to inform the insurer of this fact. Thus, [Mich. Comp.Laws Ann.] § 500.3408(b) merely safeguards an insured who, three years before becoming disabled, innocently misrepresents his or her medical condition; an incontestability clauses [*sic*] that estops an insurer from denying coverage due to the prior manifestation of a disease would grant the same degree of protection to insureds who fraudulently misrepresent their medical status. *See United Sec[.] Ins[.] Co. v. Commissioner of Ins[.],* 133 Mich.App. 38, 43 [348 N.W.2d 34] (1984) (there is no reason in law or policy for burden of risk of intentional material misrepresentations by insured on application to be placed on insurer in preference to the insured).

*Id.,* slip op. at 6–7.

However, the statutory language of section 500.3408 includes a provision to safeguard against abuse by insureds who fraudulently misrepresent their medical statuses in the policy application. As documented above, Mich.Comp.Laws Ann. § 500.3408, provides

After [2] years from the date of issue of this policy no misstatements, *except fraudulent misstatements,* made by the applicant in the application for such policy shall be used to void the policy or to deny a claim. . . .

(Emphasis added). In the policy at issue, Provident failed to include the crucial phrase "except fraudulent misstatements." By failing to include the phrase in its policy, Provident has contracted not to contest statements in the application, even if those statements were fraudulently made. In other words, Provident has agreed to extend the same degree of protection to insureds who fraudulently misrepresent their medical statuses as it does to those who innocently misrepresent their statuses. Because Provident failed to include the provision as provided in the statute, it cannot have this court now include in the policy either the specific language or the public policy behind the language.

In addition, when the court inquired during oral argument why Provident had omitted the phrase from its policy, Provident's attorney explained that the omission made the policy "more marketable." Obviously, the policy is easier to sell if the insurer agrees not to contest fraudulently made statements in the policy application. Provident, however, argues that it is not contesting benefits based on Altman's fraudulent misstatements in the policy application. Again, it contends the denial is based on the prior manifestation of Altman's chronic uveitis. However, the court finds that the public policy reasoning of the two grounds is inextricably linked. Denial of benefits based on prior manifestation, rather than mere existence, protects only insureds who have innocently misrepresented their medical statuses on policy applications. By definition, those who innocently misrepresent their statuses would not have had a prior manifestation of the disease. Conversely, those who have fraudulently misrepresented their statuses would have had a prior manifestation of the disease.

The insurer, as drafter of the policy, having failed to protect itself from fraudulent misstatements in the applications, cannot circumvent its deliberate omission, through a different yet equivalent argument, in order to deny benefits. Thus, a plain reading of the policy's incontestable

clause, the state's incontestable clause and the pertinent case law bars Provident's denial of benefits to Altman.

## III. PRE–EXISTING CONDITION CLAUSE

█ Provident is seeking repayment of the benefits paid to defendant because his disability was caused by a condition that both existed and manifested before the effective date of the policy. Clearly, such a condition is, under one provision of the policy, a pre-existing condition. The policy's pre-existing condition clause reads in part:

A claim for benefits for loss starting [after two years of the effective date of this policy] will not be reduced or denied on the ground it is caused by a Pre-existing Condition.... Pre-existing Condition means a physical impairment, deformity or a medical condition *that was not disclosed, or that was misrepresented,* in answer to a question in the application for this policy.

Plaintiff's ex. 4 at 5 (emphasis added). In the instant case the claim for benefits for loss started two years after the effective date of the policy. Provident has contracted not to reduce or deny benefits on the ground that the disability was caused by a pre-existing condition, in this case Altman's chronic uveitis. Chronic uveitis fits the definition of pre-existing condition, as it is a medical condition that was not disclosed in answer to a question in the application for the policy.

Provident contends that the court should not even reach the application of the pre-existing condition clause because the cause of the disability is not within the definition of sickness, thus not within the coverage of the policy. However,

If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

*Raska v. Farm Bureau Ins. Co.,* 412 Mich. 355, 362, 314 N.W.2d 440 (1982). In the instant case, it is clear that Altman is covered under the policy's pre-existing condition clause. Therefore, even if the court were to accept Provident's argument regarding the incontestable clause, such a reading would render the contract ambiguous. The court finds that the language of this policy, read in its entirety, is ambiguous; thus, the court will construe such ambiguity in favor of the insured.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that Provident's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Altman's motion for summary judgment is GRANTED.