John T. OGLESBY, II, M.D., Plaintiff,

v.

The PENN MUTUAL LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 93–224 MMS.

United States District Court,
D. Delaware.

May 30, 1995.

Anne C. Naczi of Tybout, Redfearn & Pell, Wilmington, DE, for plaintiff.

William W. Erhart of Erhart & Laffey, Wilmington, DE; Douglas F. Johnson of Earp, Cohn, Leone & Pendery, Westmont, NJ, of counsel, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

This is a diversity action brought by plaintiff John T. Oglesby to collect insurance benefits under a disability policy issued in February 1987 by defendant The Penn Mutual Insurance Company (Penn Mutual). Penn Mutual has denied liability for plaintiff's claim. At summary judgment, Penn Mutual sought and was granted partial rescission of the policy based on plaintiff's concealment of medical information material to Penn Mutual's risk of insurance. The Court held as a matter of law that when applying for the disability policy, plaintiff failed to disclose his medical history of cervical (neck) spine arthritis and its concomitant symptoms.

This case now stands ready for trial. The Court has already determined that Delaware law will supply the rule of decision. *Oglesby v. Penn Mutual Ins. Co.*, 877 F.Supp. 872, 878 (D.Del.1994). Presently at issue is whether, under the disability policy and Delaware law, Penn Mutual should be able to present to the jury its defense to coverage pursuant to the so-called "first manifest" doctrine. Under this theory, Penn Mutual would argue that the policy does not cover claims for disability arising from sickness that first made itself known prior to the issuance of the policy.

For the following reasons, the Court holds that under the terms of the disability policy at issue, Penn Mutual may not assert at trial a defense under the "first manifest" doctrine.

## II. FACTUAL BACKGROUND

On November 24, 1986, plaintiff applied to Penn Mutual for the disability policy that is now the focus of this lawsuit. Docket Item ("D.I.") 61 at 52. As part of the application process, Penn Mutual required plaintiff to complete a written application and undergo a medical exam and interview by a Penn Mutual medical examiner. *Id.* at 52–53. Plaintiff was then a 47 year old radiologist serving as Chief of Cardiovacular and Interventional Radiology at the Medical Center of Delaware. *Id.* at 52.

The Penn Mutual application form and the Penn Mutual medical examiner both required plaintiff to detail his complete medical history. In so doing, plaintiff did not report an incident of severe neck and left arm pain which had required treatment with cervical traction, ultrasound therapy, and Valium. *Id.* at 51, 53, 225–27. Plaintiff's illness, which caused him symptoms for almost two months in 1981, had been diagnosed by a neurologist as degenerative cervical arthritis. *Id.* at 218. However, the only arthritis plaintiff disclosed to Penn Mutual was arthritis in his hip joints. *Id.* at 51, 53. Penn Mutual approved plaintiff's application and issued a disability policy effective February 1, 1987. D.I. 4 at ¶ 3. The policy specifically excluded from coverage "any impairment due to degenerative arthritis or rheumatism of the hip region." D.I. 61 at 39. If plaintiff was to suffer total disability, Penn Mutual would pay a monthly insurance benefit of $5,000. *Id.* at 32.

In April 1990, plaintiff experienced another painful episode of his cervical arthritis, similar to his bout in 1981. Plaintiff again sought treatment from his neurologist, whom he had not consulted in the intervening nine years. D.I. 61 at 217. Plaintiff's symptoms were such that he could not perform some of his hospital duties as Chief of Cardiovascular and Interventional Radiology. Over the next few months, physical and medical therapy failed to alleviate plaintiff's symptoms. His neurologist then referred him to a neurosurgeon; plaintiff underwent surgical repair of two of his cervical vertebrae in October 1990. *Id.* at 236–37. Although the prognosis for full recovery was good, plaintiff's pain persisted, and he still could not perform certain of his employment responsibilities. In June 1992, after months of physical therapy, plaintiff's physicians informed him his condition would be permanent. Plaintiff immediately filed a claim with Penn Mutual, stating he could no longer perform the substantial and material duties of his regular occupation. He resigned his post as Chief of Cardiovascular and Interventional Radiology in 1992, but was able to continue duties as a general radiologist. *Id.* at 286. Penn Mutual refused to pay plaintiff's claim; thus, plaintiff instituted this action on the policy.

As its investigation of plaintiff's claim unfolded, Penn Mutual discovered plaintiff's concealment during the application process. Pursuant to statutory mandate, the insurance policy contained an incontestability provision directly addressing misstatements by such an insured during the application process. Deviating somewhat from the statutory language, Penn Mutual had contracted to not contest such statements made by plaintiff after two years from the effective date of the policy. Plaintiff's onset of disability occurred more than two years later than February 1987, the issue date of the policy. Consequently, as to the base policy originally issued, Penn Mutual did not contest at summary judgment plaintiff's misstatements during the application process nor move for invalidation of the policy.

Penn Mutual had also issued, however, for additional consideration, annual policy riders increasing the amount of insurance benefits payable to plaintiff in the event of total disability. Each of these riders incorporated by reference the same two year incontestability period as provided in the base policy; each rider's incontestability period commenced on the rider's effective date. With the 1990 onset of plaintiff's disability, the timetable of events allowed Penn Mutual to contest the benefit increase riders issued in 1989–1992. Accordingly, Penn Mutual moved for partial summary judgment seeking rescission of these riders. Because plaintiff had concealed information material to the risk assumed by Penn Mutual, the Court ordered the rescission of the 1989–1992 benefit increase riders. *Oglesby v. Penn Mutual Ins. Co.,* 877 F.Supp. 872, 890 (D.Del.1994).

At the final pretrial conference in this matter, Penn Mutual made known its intention to defend its denial of coverage with a doctrine known as "first manifest." This "first manifest" defense is derived from language contained on the first page of plaintiff's disability policy, which sets forth:

> *Coverage Provided by This Policy.* Subject to all provisions of the policy, we insure you against disability or other loss resulting from:
>
> · *sickness,* which first makes itself known while this policy is in force....
>
> Throughout this policy, we will use the word[ ] sickness ... as we just defined [it].

D.I. 61 at 30. Penn Mutual contends under this provision that because plaintiff's cervical arthritis first made itself known or "first manifested" itself in 1981, before the policy was in force, it may deny coverage as to this illness.

Plaintiff counters by arguing that the policy contains incontestability provisions that conflict with this "first manifest" clause. He points to Delaware law imposing a two year limit on Penn Mutual's ability to contest or deny claims stemming from pre-existing con-

ditions if the policy does not specifically exclude these pre-existing conditions. Plaintiff also argues that defendant's first manifest defense should have been asserted in its pleadings or at the latest, by the close of the discovery phase of this litigation. He also contends that Penn Mutual knew of the "first manifest" legal theory over a year ago, as counsel for Penn Mutual participated in a spring 1994 New Jersey Supreme Court case adjudicating this identical issue. Consequently, plaintiff argues that under Delaware law, failure by Penn Mutual to give plaintiff timely notice as to this additional ground for denying or avoiding liability resulted in a waiver of this defense.[1]

## III. DISCUSSION

■ Although the "first manifest" doctrine has been either embraced or rejected by other jurisdictions, it is a question of first impression in Delaware. Consequently, as a federal court sitting in diversity, this Court must predict how the Supreme Court of Delaware would decide this matter were it called upon to do so. *Kiewit E. Co., Inc. v. L & R Constr. Co.,* 44 F.3d 1194, 1201 n. 16 (3d Cir.1995). In carrying out this charge, the Court may "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1046 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)).

The present issue hinges on construction of the policy's statutorily required incontestability provisions and their impact on the scope of the policy's coverage, which is limited to sickness first making itself known while the policy is in force. *See Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274, 1277

---

1. Penn Mutual initially raised the "first manifest" legal theory during a telephone conference in fall 1994, just prior to oral argument on its motion for summary judgment. The insurer sought to supplement its written and oral argu-

ment with this defense. Because counsel for Penn Mutual conceded that this issue would implicate genuine issues of material fact, D.I. 87 at 11, the Court declined to entertain "first manifest" at summary judgment.

(7th Cir.1994) (confronting same dilemma). Ultimately, however, this matter involves policy choices concerning the effect of an insured's concealment of prior sickness in an application for insurance on a claim for a subsequent episode of the same sickness, *Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 644 A.2d 1098, 1101 (1994), vis-a-vis the insurer's decision to forgo the use of a statutorily provided defense to that precise type of concealment. *Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274, 1283 (7th Cir. 1994).

## A. Delaware Statutory Law and the Penn Mutual Disability Policy

Incontestability clauses set temporal limits on an insurer's right to challenge its insurance policy. *See, e.g., Velez–Gomez v. SMA Life Assurance Co.,* 8 F.3d 873, 875 (1st Cir.1993) (two year period of contestability as to statements by the insured during application process). Historically, these clauses arose as a reaction to the "early greed and ruthlessness of the insurers," 7 Williston on Contracts § 912 at 394 (3d ed. 1963), who were apt to deny benefits years after the policy had issued based on technicalities or pre-existing conditions. *Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 644 A.2d 1098, 1102 (1994); *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995, 1000 (S.D.Ind. 1989). As a result, many beneficiaries, especially those claiming under life or health insurance policies, were left in the untenable predicament of litigating against powerful insurance carriers. *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995, 1000 (S.D.Ind.1989). Mindful of these considerations, approximately 47 states have enacted legislation requiring life, disability, and health insurance policies to contain incontestability clauses as tools to promote certainty and reduce litigation. *Id; see also* Eric K. Fosaaen, *Aids and the Incontestability Clause,* 66 *N.D.L.Rev.* 267, 270–71 (1990).

The Delaware legislature has enacted 18 *Del.C.* § 3306, entitled "Time Limit on Certain Defenses." This law mandates the inclusion of several incontestability provisions in all health and disability insurance contracts sold to Delaware policyholders. First, the insurance policy is required to set forth:

(1) After 2 years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or deny a claim for loss incurred as disability (as defined in the policy) commencing after the expiration of such 2–year period.

18 *Del.C.* § 3306(a)(1). Delaware's statutory scheme also allows insurance companies to modify the required statutory language, subject to the approval of the State Insurance Commissioner.

[T]he insurer may, at its option, substitute for 1 or more of such provisions corresponding provisions of different wording approved by the [Insurance] Commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary....

18 *Del.C.* § 3304(a). Penn Mutual availed itself of this option, and substituted a "plainer English" version of the required provisions. The Penn Mutual policy provided:

*Contesting This Policy. Misstatements in the Application.* We rely on the statements you make in your application. We will not contest those statements after this policy has been in effect for 2 years during your lifetime. Any length of time you are disabled is excluded in computing this 2 year period.

D.I. 61 at 49. Penn Mutual chose to deviate from the model language by deleting the phrase "except fraudulent misstatements." Insurers frequently omit this language to render the policy more marketable when they agree not to contest fraudulently made statements in the application after a finite time has passed. *Provident Life and Accident Ins. Co. v. Altman,* 795 F.Supp. 216, 222 (E.D.Mich.1992). Through the lens of 20/20 hindsight and in light of this Court's previous order rescinding the policy's 1989–1992 riders, it is clear that Penn Mutual's marketing decision effectively eliminated what would have been a legal ground for rescinding plaintiff's entire policy. As a result, Penn Mutual now vigorously asserts the defense of "first manifest."

■ Penn Mutual correctly argues that although these incontestability provisions limit the time period within which an insurer can contest the insured's statements made on his application, the provisions do not preclude insurers from explicitly excluding from coverage losses arising from specified causes. *See* 18 *Del.C.* 3306(b) (incontestability provision may not be "so construed as to affect any legal avoidance of a policy or denial of a claim"); *Equitable Life Assurance Soc'y v. Bell,* 27 F.3d at 1279 (collecting cases); *Paul Revere Life Ins. Co. v. Haas,* 644 A.2d at 1103–04 (same). For example, Penn Mutual expressly excluded from coverage in plaintiff's policy "any impairment due to degenerative arthritis or rheumatism of the hip region." D.I. 61 at 39. Were plaintiff to file a claim for disability arising from arthritis in his hip, there would be no statutory or contractual limitation on Penn Mutual's ability to contest such a claim. In short, incontestability provisions relating to misrepresentations by the insured only prohibit contests as to the validity of the policy; they "do not prohibit contests which seek to establish that the event which has occurred was outside the risk assumed under the policy." *Suskind v. American Republic Ins. Co.,* 458 F.Supp. 680 (D.Del.1978); *Wilmington Trust Co. v. Mutual Life Ins. Co.,* 68 F.Supp. 83 (D.Del. 1946), *aff'd,* 177 F.2d 404 (3d Cir.1949), *cert. denied,* 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351 (1950).

Penn Mutual agrees it cannot challenge the insurance policy's validity or rescind the policy due to plaintiff's fraudulent misstatements or concealment, as the opportunity to contest these statements expired on February 1, 1989. D.I. 97 at 5. Instead, Penn Mutual maintains its denial of plaintiff's claim as not within the *scope* of the policy's *coverage,* asserting plaintiff's cervical spine arthritis as an excluded condition. The policy explicitly circumscribes its scope of coverage to any sickness "which first makes itself known while this policy is in force." Penn Mutual seeks to argue at trial that because plaintiff's current disability for which he seeks insurance benefits stems from his similar 1981 disability, it does not fall within the definition of a covered sickness and is therefore excluded.

■ At first blush, Penn Mutual's argument seems like a reasonable interpretation of the policy; upon further scrutiny, however, it meets with terminal difficulty. In addition to the above clause concerning misstatements by the insured, Delaware statutory law also requires a policy to include the following provision:

> (2) No claim for loss incurred as disability (as defined in the policy) commencing 2 years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

18 *Del.C.* § 3306(a)(2). This subsection reflects a legislative mandate that if an insured does not suffer disability for two years following the policy's issue date, his claim for benefits cannot be denied on the ground of pre-existing condition. *See Wischmeyer v. Paul Revere Life Ins. Co,* 725 F.Supp. at 1001 (construing substantially identical statute).

Again, Penn Mutual chose to substitute its own version of this language. Under the heading *Contesting This Policy,* Penn Mutual's insurance contract inserted an amended provision called *Pre-existing Conditions Excluded,* stating:

> We do not cover a disability or other loss resulting from a pre-existing condition if that disability starts or loss is incurred:

> - during the first two years from this policy's Date of Issue, unless the pre-existing condition is fully disclosed in the application and not excluded from coverage by name or specific description; and

> - after two years from this policy's Date of Issue and if the pre-existing condition is excluded from coverage by name or specific description.

> A pre-existing condition is a physical condition or sickness which, during the 5 year period prior to the effective date of this policy, caused you:

> - to have received medical advice or treatment; or

to have had symptoms which would have led an ordinarily prudent person to seek medical advice or treatment. D.I. 61 at 40. Because plaintiff experienced onset of his present disability in 1990, more than two years after the policy's effective date, he argues that here Penn Mutual may not contest his claim for cervical arthritis because it was not "excluded from coverage by name or specific description."

## B. Reconciling the Policy Provisions

Many courts have been confronted with the dilemma posed in this case: whether, despite the statutorily required provision prohibiting a denial of coverage for pre-existing illnesses after two years, the insurer is able to exclude coverage for pre-manifesting illnesses. *See, e.g., Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 644 A.2d 1098 (1994); *Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274 (7th Cir.1994); *Neville v. American Republic Ins. Co.,* 912 F.2d 813, 815 (5th Cir.1990) (construing Mississippi law); *Button v. Connecticut Gen. Life Ins. Co.,* 847 F.2d 584 (9th Cir.) (construing Arizona law), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 250 (1988); *Provident Life and Accident Ins. Co. v. Altman,* 795 F.Supp. 216 (E.D.Mich.1992) (construing Michigan law); *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995 (S.D.Ind.1989) (construing Indiana law); *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425 (5th Cir.1975) (construing Florida law); *see also* Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance,* 13 A.L.R.3d 1383 (1967) (collecting cases). If the pre-existing incontestability clause is disregarded, the policy terms clearly eliminate coverage for pre-manifesting illnesses. *Equitable Life Assurance Soc'y v. Bell,* 27 F.3d at 1280. The incontestability clause, however, muddles the picture considerably, with its sweeping reference to pre-existing conditions. *Id.*

Some courts "have concluded that the incontestability clause, despite its reference to 'pre-existing' illnesses and conditions, leaves the insurer free to exclude pre-manifesting diseases and condition from the policy coverage." *Id.* (citing *Button v. Connecticut Gen. Life Ins. Co.,* 847 F.2d at 588–89; *Keaten v. Paul Revere Life Ins. Co.,* 648 F.2d 299, 301–03 (5th Cir.1981); *Allen v. Aetna Life Ins. Co.,* 563 F.2d 1240, 1241–42 (5th Cir.1977)). Many of these courts have reasoned that there is a distinction between conditions that are pre-*existing* as contrasted with those that are pre-*manifesting*. *See, e.g., Paul Revere Life Ins. Co. v. Haas,* 644 A.2d at 1107. If an insured was unaware of the condition, the condition existed but was not manifest, and the insurance company could not use it as a defense; when the insured knew of his condition, the insurer could deny coverage. *Id.* Under this interpretation, the first manifest doctrine denies the benefit of the incontestability clause to insureds who lie on their application. *Id.* As a practical matter, the constructional preference accorded to the policy terms excluding coverage for pre-*manifesting* conditions nullifies the provision barring denials for pre-*existing* conditions. *See Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425, 429–30 (5th Cir. 1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976) (under Florida law, pre-existing conditions clause "has no effective field of operation" in light of first manifest clause); *accord Weiner v. Paul Revere Life Ins. Co.,* No 90–72772, 1991 WL 353370 at *2–3 (E.D.Mich. July 31, 1991).

One court, concluding that insurers should compensate victims without condoning wrongful conduct and fraudulent statements, has reconciled the two provisions by construing the policy's "definition of 'sickness' as operating as an 'exclusion by specific description.'" *Paul Revere Life Ins. Co. v. Haas,* 644 A.2d at 1105. Thus, any sickness manifesting itself prior to the policy's effective date, whether explicitly referenced or not by the insurer, would be excluded. The *Haas* court reasoned any other result would be tantamount to finding the legislature contemplated it was authorizing insureds to "conceal a known disability and then reap the benefit of their deception by recovering for the disability that was so concealed." *Id.* at 1107.

A growing minority of courts have rejected the above rationales by favoring a plain meaning approach to the statutory and policy language. These cases uniformly hold that "if an insured is not disabled for two years

after issuance of the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition." *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995, 1001 (S.D.Ind.1989); *accord Equitable Life Assurance Soc'y v. Bell,* 27 F.3d 1274 (7th Cir.1994); *Provident Life & Accident Ins. Co. v. Altman,* 795 F.Supp. 216 (E.D.Mich.1992); *Manzella v. Indianapolis Life Ins. Co.,* 814 F.Supp. 428 (E.D.Pa.1993); *White v. Massachusetts Casualty Ins. Co.,* 96 A.D.2d 732, 465 N.Y.S.2d 345 (1983); *Fischer v. Massachusetts Casualty Ins. Co.,* 458 F.Supp. 939 (S.D.N.Y.1978); *Taylor v. Metropolitan Life Ins. Co.,* 106 N.H. 455, 214 A.2d 109 (1965). These courts reason that the policy terms defining sickness merely address the general scope of the policy's coverage and "do not identify any disease or condition with particularity sufficient to render them excluded by 'name or specific description.'" *Equitable Life Assurance Soc'y v. Bell,* 27 F.3d at 1280; *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. at 1004–05. In order to benefit from this final phrase of the incontestability clause, the insurer must specify or describe a particular pre-existing condition and not merely insert a catch-all clause elsewhere in the policy attempting to exclude pre-existing illnesses. *Id.*

■ The above survey of the case law demonstrates the difficulty inherent in exploring "even a small area of this subject without becoming lost in a maze of conflicting decisions and subtle distinctions." *See Suskind v. American Republic Ins. Co.,* 458 F.Supp. 680, 683 (D.Del.1978) (commenting on incontestability clauses in group life insurance policies), *rev'd on other grounds,* 607 F.2d 76 (3d Cir.1979). Conflicting authority notwithstanding, the contract provisions and relevant state law in this case ultimately direct this Court's analysis. Delaware law dictates that clear language in an insurance policy should be given its ordinary and usual meaning. *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992).

The Penn Mutual policy clearly establishes its contractual boundaries by defining coverage for "any sickness that first makes itself known while the policy is in force." Pursuant to legislative mandate, the policy also sets forth what the policy does *not* cover, by way of an incontestability provision relating to what is excluded under the policy. The provision distinguishes between disabilities starting *within* two years of the issuance of the policy, and *after* two years from issuance of the policy. Where, as here, the insured did not suffer disabling symptoms until more than two years after the policy issued, the policy states it does not cover a disability resulting from a pre-existing condition if the policy excludes that condition by name or specific description. The converse is also true: if, after more than two years after the policy issued, a disability arises from a pre-existing condition not specifically excluded, then it is covered.

This 'plain meaning' interpretation of the policy is supported by examination of the corresponding statutory language in the Delaware Code, which provides in relevant part that

"No claim for loss incurred as disability ... commencing 2 years from the date of issue of this policy shall be ... denied on the ground that a disease or physical condition not excluded from coverage by name or specific description ... had existed prior to the effective date of coverage of this policy."

18 *Del.C.* § 3306(a)(2). The clear import of both the statutory and policy provisions is that "if an insured is not disabled for two years after issuance of the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition." *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995, 1001 (S.D.Ind.1989). The statute requires an unequivocal promise by the insurer that that after two years, "no disability claim shall be denied on the ground that the underlying disease or condition 'existed' before the policy became effective." *See Equitable Life Assurance Soc'y v. Bell,* 27 F.3d at 1282 (construing substantially identical statute). The statute speaks plainly in terms of "existing," not "manifesting" (or first making itself known); the term 'exist' ordinarily refers to a state of being, without qualification as to other qualities, such as manifestation. *Id.* Consequently, in the ab-

sence of such a distinction by the legislature, one must conclude that the Delaware legislature intended that a pre-existing condition includes those both known and unknown to the insured prior to the policy date. *See id.*

It is also important to emphasize the crux of this incontestability provision: the onset of disability (as opposed to onset of the pre-existing condition). If the disability begins prior to the end of the two year period, and the applicant had concealed the condition, the insurer is free to deny the claim. Similarly, if the insured waits until the two years have passed before filing a claim for disability, but the disability started prior to the end of the contestability period, the insurer may deny liability. By use of the two year period, the legislature struck a balance:

> The clause protects an insured who is healthy enough to work throughout the two-year period from losing the security of disability insurance because of some prior condition that might eventually disable him. On the other hand, the insurer is protected in that it is not precluded from denying benefits to an applicant whose pre-existing condition is so bad that he becomes disabled during the two-year period.

*Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. at 1001–02.

■■■ Delaware law requires that language integrated into an insurance policy by force of a statute be interpreted and given effect in accordance with the apparent intent of the legislature. *Suskind v. American Republic Ins. Co.*, 458 F.Supp. at 684 (D.Del. 1978); John A. Appleman and Jean Appleman, 12 *Insurance Law and Practice* § 7043 (1981). Moreover, when any provision in a policy subject to Delaware's health insurance code is in conflict with any provision of that chapter of the code, the rights, duties, and obligations of the insurer, the insured and

the beneficiary shall be governed by the provisions as set forth by the legislature. 18 *Del.C.* § 3331.[2] By choosing language different from the statutory model, Penn Mutual "attempts to nullify the protection of the incontestable clause by excluding from coverage" illness which first makes itself known before the policy is issued. *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. at 945. Penn Mutual's interpretation would thwart the legislatively imposed incontestability clause, and reduce its protection to less than that which was contemplated by the Delaware General Assembly. *Accord Equitable Life Assurance Soc'y v. Bell*, 27 F.3d at 1282. The Court predicts that the Supreme Court of Delaware would hold that Penn Mutual cannot craft a policy more onerous to its insured than that provided by statute.

Arguably, this interpretation could be seen as condoning and encouraging intentionally wrongful conduct. *Paul Revere v. Haas*, 644 A.2d at 1107. As one jurist has bluntly opined, "It is not easy to write an opinion upholding the rights of a liar." *Id.* at 1109 (O'Hern, J., dissenting). These misgivings dissipate quickly when all relevant portions of the policy are examined, as they must be, for full consideration of the issues and policies presented in this case. *See Cheseroni v. Nationwide Mut. Ins. Co.*, 402 A.2d 1215, 1217 (Del.Super.Ct.1979), *aff'd*, 410 A.2d 1015 (Del.1980) (all relevant policy passages must be read together, not singly or in isolation); *New Castle County v. Hartford Accident and Indem. Co.*, 933 F.2d 1162, 1183 (3d Cir.1991) (same).

Despite its lachrymose cries, Penn Mutual must bear the responsibility for the predicament in which it finds itself. As discussed above, Delaware law afforded Penn Mutual the teeth it needed to contest any and all fraudulent misstatements by plaintiff and to preserve the insurer's right to rescind the

---

**2.** Section 3331, "Conforming to statute," provides:

    (a) No policy provision which is not subject to this chapter shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to this chapter.

    (b) A policy delivered or issued for delivery to any person in this State in violation of this

chapter shall be held valid but shall be construed as provided in this chapter. When any provision in a policy subject to this chapter is in conflict with any provision of this chapter, the rights, duties, and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of this chapter. 18 *Del.C.* § 3331.

policy. *See* 18 *Del.C.* § 3306(a)(1) (fraudulent misstatements excepted from incontestability clause relating to validity of the policy). Penn Mutual took a calculated risk by removing that protection and opting for a more lenient, and thus more marketable version of the incontestability clause.[3] Courts are not in the habit of relieving parties, especially sophisticated insurance companies, of their improvident decisions. *Harry H. Rosin Co. v. Eksterowicz*, 45 Del. (6 Terry) 314, 73 A.2d 648, 651 (1950); 17 C.J.S. *Contracts* § 1(2) at 549 (1963). Consequently, the Court holds that the Supreme Court of Delaware would not relieve Penn Mutual of its bad bargain by allowing it to use a defense of "first manifest" at trial.

## IV. CONCLUSION

This Court is ultimately faced with making the unsavory selection between permitting possible recovery by a dishonest insured and permitting a dishonest insurance company to break its promise that it would not contest coverage after two years. *Cf. Paul Revere Life Ins. Co. v. Haas*, 644 A.2d at 1109 (O'Hern, J., dissenting). In the contractual exchange between these parties, the company chose to forgo its legal rights and may not now regain them by expanding other policy provisions in contravention of Delaware law.

Accordingly, for the reasons discussed above, the Court holds that under Delaware law, the terms of plaintiff's disability insurance policy issued by Penn Mutual do not allow defendant to avail itself of a defense based on the doctrine of "first manifest." Because this issue has been decided in favor of plaintiff on the merits, the Court need not reach plaintiff's waiver argument.

---

3. Delaware law also allowed, as an alternative, certain policies, including plaintiff's policy, to have its incontestability provision read as follows:

Incontestable: After this policy has been in force for a period of 2 years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to any statements, other than fraudulent statements, contained in the application.

18 *Del.C.* § 3306(c). Here again, the Delaware legislature granted ample opportunity for Penn Mutual to reserve the right to contest plaintiff's fraudulent misstatements without temporal limitation.