[No. 40275-7-I. Division One. September 7, 1999.]

GREGORY M. JACK, *Appellant*, v. THE PAUL REVERE LIFE INSURANCE COMPANY, *Respondent*.

*Thomas Cline*, for appellant.

*Medora Marisseau, Robert Francis Riede*, and *R. Daniel Lindahl* of *Bullivant Houser Bailey Pendergrass & Hoffman*, for respondent.

GROSSE, J. — Gregory Jack obtained a disability insurance policy from Paul Revere Life Insurance Company (Paul Revere) in 1985. He became totally disabled by multiple sclerosis (MS) in 1994 and sought benefits under the policy. Paul Revere denied the claim. The court granted Paul Revere summary judgment, based upon Paul Revere's

contention that Jack's MS was excluded from coverage because it was manifest before the policy was issued. We agree.

## Facts

Jack is an ophthalmologist. He began experiencing blurred vision during exercise in the summer of 1985 and reported this problem to Dr. Craig Smith, a neurologist specializing in eye disorders, on July 10, 1985. According to Paul Revere, Jack also reported a history of blurred vision, increased urinary frequency, and imbalance. At Dr. Smith's recommendation, Jack had an MRI on July 11. Jack claims that while Dr. Smith expressed the opinion that his symptoms and the MRI suggested a demyelinating illness, no definitive diagnosis of MS was made. Paul Revere claims that Dr. Smith's August 14 report ("[t]he presence of multiple lesions over a 12 year period of time suggests the diagnosis of a demyelinating illness") and the MRI report revealing "numerous areas of irregular increased intensity satisfy Roentgen criteria for a demyelinating process such as Multiple Sclerosis" constituted a definite diagnosis of MS. Dr. Smith wanted to follow up, but Jack did not see any physician for nine years.

On July 17, 1985, Jack applied for a disability insurance policy from Paul Revere. A dispute now exists about the application. Jack claims that the application asked only two medical questions: whether he had been (1) treated for heart trouble, stroke, or cancer in the past two years, and (2) admitted or advised to be admitted into a hospital or other medical facility in the past 90 days. Paul Revere claims that the application also asked other medical questions, including whether Jack (1) had been examined by a physician in the past five years, and (2) knew of or had been treated for a disease of the eyes, brain, or nervous system. The original application was purged from Paul Revere's files, so no original exists. Jack paid the initial premium with the application and Paul Revere issued the policy on August 21, 1985.

The policy provided in part that in the event of a policy lapse for nonpayment, the policy was automatically reinstated after receipt of a reinstatement premium if Paul Revere did not reject the reinstatement premium within 45 days. On February 21, 1987, the policy lapsed for nonpayment. Jack submitted an application for reinstatement with a premium payment on September 11, 1987. On June 30, 1988, more than 45 days after the reinstatement premium was paid, Paul Revere rejected that application because the premium had not been paid within six months of the lapse. Jack was not informed of the 45-day automatic reinstatement provision.

On July 29, 1988, Jack completed a new disability insurance application, containing more detailed medical questions. Jack responded "no" to questions about whether he had (1) been treated for or had any known indication of a disorder of the brain, nervous system, or eyes, and (2) received medical advice or treatment for any other problem within five years.[1] On August 1, 1988, Paul Revere issued a new policy.

Jack experienced no further medical problems until late 1993 when he noticed a sudden onset of instability, gait disturbance, blurred vision, numbness of the fingertips, loss of manual dexterity, and occasional incontinence. On September 9, 1994, Dr. W.T. Longstreth confirmed that Jack had MS, and concluded that he was totally disabled.

In October 1994, Jack sought disability benefits under the Paul Revere policy. Paul Revere denied the claim on the grounds that Jack's MS first manifested itself before the policy was issued and thus was excluded under the policy.

Jack sued Paul Revere, seeking a declaration confirming his total disability, past and future benefits under the policy, damages under the Consumer Protection Act, and attorney fees. The parties filed cross motions for summary judgment. In part, Jack argued that regardless of when he knew

---

[1]Jack later admitted that he lied on this application. He claimed that he did so to protect himself because he thought that he should still be covered by the first policy and should not have to be answering such questions.

he had MS, the incontestability clause precludes Paul Revere from denying him coverage, particularly because Paul Revere chose not to include the statutory fraudulent misrepresentation exception in its incontestability clause. Jack also argued the relevant policy for construction was the one issued in 1985 because Paul Revere did not reject his reinstatement premium within 45 days.

The trial court dismissed Jack's claims. In its oral ruling, the court concluded that a defense based upon Jack's alleged misrepresentations was not available to Paul Revere. But the court ruled that Jack's MS was not covered because the policy's definition of sickness was an enforceable exclusion that could not be construed against Paul Revere because it was mandated by the Legislature.

## Standard of Review

■ We conduct a de novo review of a summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, to determine whether any genuine issue of material fact is in dispute and whether the moving party is entitled to judgment as a matter of law.[2]

■ Interpretation of insurance contract language is a matter of law, requiring us to consider the contract in its entirety and to give effect to each policy provision.[3] A policy is ambiguous only if its provisions are fairly susceptible to two different interpretations.[4] In determining whether an ambiguity exists, we view the language the way it would be read by the average insurance purchaser and give any undefined terms their ordinary meaning, not a technical,

[2]CR 56(c).

[3]*Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997).

[4]*Id.* at 424.

legal meaning. Ambiguous provisions are generally construed against the insurer.[5]

## Jack's Paul Revere Policy

 At issue here are the policy provisions regarding coverage for preexisting conditions, and the incontestability clause. The policy defines sickness as *"sickness* or disease *which first manifests itself after the Date of Issue* and while Your Policy is in force." (Emphasis added.) The policy excluded preexisting conditions:

**PART 3**

**EXCLUSIONS**

. . . .

**3.2 PRE-EXISTING CONDITION**

We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application. *Pre-Existing Condition means a sickness or physical condition for which symptoms existed* prior to the Date of Issue that would cause an ordinarily prudent person to:

 a. Seek diagnosis, care, or treatment within a five-year period prior to the Date of Issue; or

 b. For which medical advice or treatment was recommended by or received from a physician within a five-year period prior to the Date of Issue.

Also We will not pay benefits for any loss We have excluded by name or specific description.[6]

(Emphasis added.) The policy also included the following incontestability clause:

**10.2 INCONTESTABLE**

 a. After Your Policy has been in force for 2 years, exclud-

---

[5]*Id.* at 424.

[6]In an amendment, the policy defined preexisting conditions using all but the first and last sentences above.

ing any time You are Disabled, We cannot contest the statements in the application.

b. *No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue.*

(Emphasis added.)

No Washington case has construed these two provisions. The question posed here has, however, been addressed in numerous other jurisdictions.[7]

## Incontestability Clause

Incontestability clauses set time limits on an insurer's right to challenge its insurance policy.[8] Such clauses arose as a response to the " 'greed and ruthlessness' " of insurers who often denied benefits years after a policy issued based on technicalities or preexisting conditions, leaving many beneficiaries in the untenable position of litigating against powerful insurance companies.[9] For these reasons, some 47 states have legislatively required incontestability clauses in life, disability, and health insurance policies to promote certainty and reduce litigation in these areas.[10] The clauses essentially amount to a short statute of repose, as our Supreme Court recognized in 1931: "The general rule is that a policy containing a clause declaring that the contract shall be incontestable after a specified time cannot

---

[7]*Compare Oglesby v. Penn Mut. Life Ins. Co.*, 889 F. Supp. 770, 773-74 (D. Del. 1995), *aff'd*, 127 F.3d 1096 (3d Cir. 1997) (holding that incontestability clause precludes first manifest defense) *with Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098, 1100 (1994) (holding that incontestability clause does not prevent insurer from denying coverage for intentionally concealed diseases).

[8]*Oglesby*, 889 F. Supp. at 774.

[9]*Id.* (quoting 7 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 912, at 394 (Walter H.E. Jaeger ed., 3d ed. 1963); *Haas*, 644 A.2d at 1102; *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F. Supp. 995, 1000 (S.D. Ind. 1989)).

[10]*Oglesby*, 889 F. Supp. at 774 (citing *Wischmeyer*, 725 F. Supp. at 1000).

be contested after that period on any ground not excepted therein."[11]

Washington first required such provisions in all disability policies in 1951. *See* LAWS OF 1951, ch. 229, § 6. The current mandate for incontestability provisions in all disability insurance policies, RCW 48.20.052, was enacted in 1983. That provision is entitled "Standard provision No. 3—Time limit on certain defenses" and provides:

There shall be a provision as follows:

"TIME LIMIT ON CERTAIN DEFENSES: (a) After two years from the date of issue of this policy no misstatements except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period."

(The foregoing policy provision shall not be so construed as to affect any legal requirement for avoidance of a policy or denial of a claim during such initial two year period, nor to limit the application of RCW 48.20.050, 48.20.172, 48.20.192, 48.20.202, and 48.20.212 in the event of misstatement with respect to age or occupation or other insurance.)

(A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium (1) until at least age 50 or, (2) in the case of a policy issued after age 44, for at least five years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption "INCONTESTABLE":

"After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.")

"(b) No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a

---

[11]*Millis v. Continental Life Ins. Co.*, 162 Wash. 555, 563, 298 P. 739 (1931).

disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

(More stringent provisions may be required by the commissioner in connection with individual disability policies sold without any application or with minimal applications.)

## Paul Revere's Incontestability Clause

Based upon the statutory mandate, Paul Revere included the following incontestability clause in its disability insurance policy:

**10.2 INCONTESTABLE**

 a. After Your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application.

 b. No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue.

As permitted by statute, Paul Revere drafted its incontestability clause so that it was more favorable to the insured than was required. The first provision of this incontestability clause limits the time within which Paul Revere can contest statements in an application and deny coverage if those statements are shown to be inaccurate. The statute permitted Paul Revere to retain a defense based upon fraudulent misstatements for an unlimited time,[12] but Paul Revere chose to omit that optional provision. Such a choice is frequently made by insurers to increase the policy's marketability, but here that choice also eliminated a potential ground for rescission of Jack's

[12]RCW 48.20.052(a).

policy.[13] Paul Revere concedes it cannot seek to invalidate the policy based on Jack's alleged misstatements or concealment.

Thus, it is the second section of the incontestability clause, dealing with preexisting conditions, which is relevant here. Under that provision, Paul Revere argues that the policy covers only disability because of "sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force," and that Jack's claim was therefore beyond the scope of coverage because his MS was a premanifesting condition. Paul Revere argues that the incontestability clause does not control because the terms "exist" and "manifest" have different meanings, and thus the term "existing" as used in the incontestability clause does not apply to conditions that have already manifested. This is generally called the "first manifest doctrine." Jack argues, on the other hand, that what is manifest is clearly included in what "exists," and that the plain language of the incontestability clause limits defenses relating to preexisting conditions to two years unless the condition is specifically enumerated, regardless of whether or not such preexisting conditions were "manifest" before the policy issued.

While this is a question of first impression in Washington, many other courts have addressed the same issue, reaching vastly different results.[14] Some courts, once deemed the "majority," have found the distinction between "exist" and "manifest" to be sound.[15] Some courts have held that the definition of sickness, which is limited to conditions first

---

[13]*See Oglesby*, 889 F. Supp. at 774 (citing *Provident Life & Accident Ins. Co. v. Altman*, 795 F. Supp. 216, 222 (E.D. Mich. 1992)).

[14]*See* Dale Joseph Gilsinger, Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance*, 67 A.L.R.5TH 513 (1999) (collecting cases); *see also Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1017-19 (6th Cir. 1998) (discussing different approaches to this analysis).

[15]*See Neville v. American Republic Ins. Co.*, 912 F.2d 813, 814-15 (5th Cir. 1990); *Button v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 584, 588-89 (9th Cir. 1988); *Keaten v. Paul Revere Life Ins. Co.*, 648 F.2d 299, 301-03 (5th Cir. 1981); *Allen v. Aetna Life Ins. Co.*, 563 F.2d 1240, 1241-42 (5th Cir. 1977); *Massachusetts*

manifesting while the policy is in force, defines the scope of what is covered under the policy and, therefore, have declined to interpret an incontestability clause to require coverage beyond that defined in the policy.[16] Other courts have held that the definition of "exist" does not include the concept of "manifest" and, therefore, excluding coverage for premanifesting diseases does not violate the incontestability clause.[17] Still other courts have reached the same conclusion based upon the belief that the Legislature did not intend for incontestability clauses to encourage fraudulent applications for disability insurance.[18] Other courts have avoided addressing the exist/manifest distinction altogether, holding instead that incontestability clauses were relevant only to the validity of the policy and had no impact on coverage.[19]

A growing "minority" of courts have recognized that the above constructions nullify the incontestability clause's bar on the denial of claims based upon preexisting conditions after two years.[20] These courts have rejected the exist/manifest distinction in favor of a plain meaning construction of these policy provisions,[21] and hold that regardless of the term "manifest" in the definition of sickness, " 'if an

---

*Cas. Ins. Co. v. Forman*, 516 F.2d 425, 429-30 (5th Cir. 1975); *Haas*, 644 A.2d at 1104-08.

[16]*Neville*, 912 F.2d at 814-15; *see also National Life & Accident Ins. Co. v. Mixon*, 291 Ala. 467, 282 So. 2d 308, 316 (1973).

[17]*Forman*, 516 F.2d at 429.

[18]*Haas*, 644 A.2d at 1107.

[19]*See Button*, 847 F.2d at 588; *Keaten*, 648 F.2d at 302.

[20]*Oglesby*, 889 F. Supp. at 776 ("under Florida law, pre-existing conditions clause 'has no effective field of operation' in light of first manifest clause") (citing *Forman*, 516 F.2d at 429-30).

[21]*See Poe*, 143 F.3d at 1018 (Michigan law); *Equitable Life Assurance Soc'y v. Bell*, 27 F.3d 1274 (7th Cir. 1994) (Indiana law); *Oglesby*, 889 F. Supp. at 776-77 (Delaware law); *Manzella v. Indianapolis Life Ins. Co.*, 814 F. Supp. 428, 433 (E.D. Pa. 1993) (New Jersey law); *Altman*, 795 F. Supp. at 216, 223 (Michigan law); *Wischmeyer*, 725 F. Supp. at 1001 (Indiana law); *Fischer v. Massachusetts Cas. Ins. Co.*, 458 F. Supp. 939, 944-45 (S.D.N.Y. 1978) (New York law); *Estate of Doe v. Paul Revere Ins. Group*, 86 Haw. 262, 948 P.2d 1103, 1118, 1122, 67 A.L.R.5TH 743 (1997) (Hawaii law); *Insurance Comm'r v. Mutual Life Ins. Co.*, 111 Md. App. 156, 680 A.2d 584, 599 (Maryland law), *aff'd*, 352 Md. 561, 723

insured is not disabled for two years after issuance of the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition.' "[22]

█ Ultimately, while these cases provide a framework for our analysis, it is the policy's provisions and our own state law that direct our analysis. Washington law requires us to enforce unambiguous terms in an insurance policy.[23] In so doing, we view the contract in its entirety and read the policy's terms as an average insured would, giving undefined terms their "ordinary and common meaning."[24] We are also mindful of the rule that in construing contracts we are to attempt to give meaning to all of the provisions.[25] Applying these rules, we are convinced that the trial court was correct in denying coverage.

The policy covers sickness which first manifests itself after the date of issue. Simply stated, "manifest" in this context means a sickness that has made itself known.[26] This is consistent with sickness that is excluded, i.e., for which symptoms exist that would cause a reasonable prudent person to seek treatment or for which treatment was recommended. There is no confusion at this juncture. If you are sick or injured when you apply and you know it or should know it there is no coverage for disability arising from that particular condition.

█ We do not believe, if one avoids the epistemological debate about whether anything exists that is not manifest, that the next step is at all unclear either. If you are suffering from a condition about which you do not know, nor rea-

A.2d 891 (1999); *Monarch Life Ins. Co. v. Brown*, 125 A.D.2d 75, 79-80, 512 N.Y.S.2d 99 (1987) (New York law).

[22]*See Oglesby*, 889 F. Supp. at 776-77 (quoting *Wischmeyer*, 725 F. Supp. at 1001).

[23]*Allstate Ins. Co.*, 131 Wn.2d at 424.

[24]*Id.*

[25]*Id.*

[26]Manifest is defined as "capable of being readily and instantly perceived by the senses and esp. by the sight : not hidden or concealed : open to view." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1375 (1981).

sonably could know, the fact that the condition may turn out to have been in existence prior to the date of issue of the policy cannot be used to deny coverage. This approach gives meaning to every provision of the contract of insurance, and is consistent with the general principle that an incontestability clause cannot create coverage where none existed in the first place.[27]

Our approach is consistent to that of the California Court of Appeals in *Galanty v. Paul Revere Life Insurance Company*.[28] There, on very similar facts, the court stated:

> Appellant's position is not hard to understand. . . . [H]e says that any sickness which was "manifest" before the Date of Issue necessarily "existed" before that date. So if the condition "existed," it is free from challenge by respondent due to the operation of part b of the incontestability clause. In short, the incontestability clause trumps the coverage clause.
>
> There are at least two problems with appellant's position. The first is that it ignores existing California precedent which holds that an incontestability clause cannot be used to create coverage where there was none in the first instance. The second problem is that, for all intents and purposes, it ignores the coverage clause and reads it out of the policy.
>
> . . . .
>
> . . . To hold that an incontestability clause cannot create coverage where none existed in the first place appropriately responds to reasonable expectations. An applicant who is unaware of a potentially disabling condition will be assured that after two years have passed he cannot be questioned about whether he was in fact aware of the condition at the time of the application. On the other hand, an applicant with a manifest "sickness" will know that the sickness will never be covered. Both law and logic compel this result.

[27]*See Pacific Mut. Life Ins. Co. v. Fishback*, 171 Wash. 244, 247-48, 17 P.2d 841 (1933) (citing *Metropolitan Life Ins. Co. v. Conway*, 252 N.Y. 449, 452, 169 N.E. 642 (1930)).

[28]*Galanty v. Paul Revere Life Ins. Co.*, 77 Cal. Rptr. 2d 589, 593-95 (Cal. App. 2d Dist. 1998) (footnotes omitted), *review granted*, 966 P.2d 982, 79 Cal. Rptr. 2d 671 (1998). *See also Callahan v. Mutual Life Ins. Co.*, 71 Cal. App. 4th 1089, 84 Cal. Rptr. 2d 342 (1999)

Appellant says that acceptance of respondent's position would make the incontestability clause a nullity. Not so. As noted by the court of appeals in *Equitable Life Assur. Soc. of U.S. v. Bell*, [27 F.3d 1274, 1283 (7th Cir. 1994)], "Many disabilities spring from causes that may exist for years without symptoms detectable by an ordinary person." (See also *Metropolitan Life Ins. Co. v. Devore*, [66 Cal. 2d 129, 140, 424 P.2d 321, 56 Cal. Rptr. 881 (1967)] [referring to "where the latent condition becomes manifest"].) There is plainly a distinction between a disease or sickness that is manifest and that which may exist unbeknownst to the insured. It is the latter which is covered by the incontestability clause. The former, involving a sickness that is manifest before the effective date of the policy, is simply not a covered risk.

Therefore, while we are aware that there are other approaches, we believe that the one we take here is the most consistent with Washington law, the reasonable expectations of the ordinary consumer, and with a logical interpretation of the terms of the agreement.

The trial court is affirmed.

AGID, A.C.J., and COX, J., concur.

Reconsideration denied November 9, 1999.

Review denied at 140 Wn.2d 1019 (2000).